## KIDD PIPELINE AND SPECIALTIES INC., Appellant,

v.

## James Craig CAMPAGNA, Dominick Campagna, Jr., Individually and d/b/a Cam Industries, Appellees.

### No. A14–85–865–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 5, 1986.

Rehearing Denied July 3, 1986.

Raymond C. Kerr, Houston, for appellant.

Leonard M. Roth, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and CANNON and ROBERTSON, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This is an appeal from an order of dismissal. The trial court dismissed appellant's cause of action against appellees due to the failure of appellant to comply with discovery orders. In two points of error appellant argues that the trial court abused its discretion in dismissing the lawsuit. We affirm the judgment of the trial court.

Kidd Pipeline and Specialties, Inc., (Kidd or appellant) is in the business of manufacturing and fabricating urethane products. James Craig Campagna (Campagna) was a production superintendant for Kidd who terminated his employment in December of 1981. Campagna and Dominick Campagna, Jr., (Jr.) formed Cam Industries (Cam), which became a competitor of Kidd. At the time Campagna worked for Kidd and for a time after he left, Doris Davis (Doris) was the President of Kidd.

On June 22, 1982, Kidd filed suit seeking to enjoin Campagna, Jr., and Cam from using information learned by Campagna while in the employment of Kidd. Kidd alleged that the manufacturing and fabricating process developed by its officers and agents are unique in the industry. Due to these developments Kidd claimed to gain an advantage in a highly competitive market. Kidd alleged that Campagna took this information and was using it to his advantage in his new company. Kidd additionally alleged that Campagna should be enjoined from using customer lists and information concerning needs of such customers obtained while in the employment of Kidd. On July 13, 1982, the trial court granted a temporary injunction against Campagna, Jr., and Cam.

After the temporary injunction was granted appellees tried to start discovery. On November 9, 1982, the trial court signed an order compelling Kidd to produce documents requested by appellees. By agreement of counsel these documents were to be produced on November 12, 1982, when the depositions of Billy (Billy) and Doris Davis (Doris) were to be taken. On

this date Billy presented himself and was deposed. Doris refused to be deposed. The documents were not produced. The testimony of Doris was crucial because according to Billy, Doris was the sole possessor of all the knowledge concerning Kidd's secrets in the manufacturing of polyurethane products.

On or about January 6, 1983, appellees filed a Motion for Sanctions due to the failure of Kidd to produce the requested documents and Doris' failure to appear for deposition. On or about January 21, 1983, the trial court ordered Doris to appear for deposition within 30 days but no later than February 18, 1983, and ordered production of the requested documents. Appellees filed a second Motion for Sanctions on or about September 9, 1983, due to the failure of Doris to comply with the court order of January 21, 1983, and the failure of Kidd to produce the requested documents. A notation on the court's docket sheet indicates that on October 3, 1983, the court ordered Doris to appear for deposition on October 13, 1983. No deposition was taken on October 13. Appellees again set Doris' deposition for September 13, 1984, and once again she failed to appear. Appellees were finally able to begin to depose Doris when she complied with a bench order, made on May 3, 1985, to appear in the courtroom on May 17, 1985, to present herself for deposition.

At her deposition on May 17, Doris frustrated appellees attempt to depose her. Doris, by this time claimed that she no longer worked for Kidd although she had an office at Kidd, claimed she had access to documents only for her own use and brought her own attorney to the deposition. She was evasive in answering most questions and a short time into the deposition she had an alleged nervous breakdown. She claimed to be unable to continue. Doris subsequently tendered an affidavit by a doctor stating that she was mentally incapable of giving testimony in the deposition format. May 17, 1985, was also the date when Kidd was supposed to produce the requested documents. The attorney for Kidd stated during the attempted deposi-

tion of Doris that he had eleven boxes of records available for inspection. But Kidd's attorney refused examination of the eleven boxes by appellees and their counsel. Kidd never produced or filed the documents with the court.

At a hearing on July 12, 1985, the court stated that if Doris did not make herself available to be deposed he would not make the defendants go to trial without her deposition and would dismiss the case. Additionally, a further agreement was reached as to the requested documents. Kidd's CPA was supposed to review the corporate records to delete any proprietary information and then present himself for deposition. Shortly thereafter, the CPA requested a transcript of the July 12th hearing so that he could better understand the scope of the court's order. On July 22, 1985, the CPA received a transcript of the July 12th hearing and on the next day he advised Kidd's attorney that he believed he might be giving away proprietary information and insisted on further clarification from the court. On July 23, 1985, Kidd's temporary injunction was dissolved on appellees' motion. The court then ruled that the entire case would be dismissed if the documents were not produced before the docket call of the case. On the day of the docket call, the case was dismissed due to the failure to secure the deposition of Doris and the failure of Kidd to produce the documents as ordered by the court.

In two points of error appellant argues that the trial court abused its discretion by granting sanctions and dismissing appellant's case. In its first point of error, appellant contends that Doris was no longer a party to the lawsuit but merely a witness, thus the court could not grant sanctions against appellant due to the failure of a non-party witness to comply with a discovery request. This argument is predicated on the fact that as of May 17, 1985, when Doris appeared for deposition, she claimed to no longer hold any formal position in the management of Kidd. Appellant also argues that Doris was not given proper notice of the deposition, that she

was mentally incapable of giving her deposition, and that other forms of discovery were available. In its second point of error appellant argues that the trial court abused its discretion because appellant had attempted to comply with the court's discovery order but was frustrated in attempting full compliance. This argument was based on appellant's attempt to delete what it considered to be confidential and proprietary information before handing over corporate documents to appellees.

The purpose of discovery proceedings is to allow the parties to obtain full knowledge of facts and issues before trial. *West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978). The trial court has great latitude in ordering discovery and such orders will not be set aside unless there is a clear abuse of discretion. *Meyer v. Tunks* 360 S.W.2d 518 (Tex.1962); *Terr v. Duddleston*, 641 S.W.2d 569, 579 (Tex.App.—Houston [14th Dist.] 1982, *rev'd on other grounds*, 664 S.W.2d 702 (1984). Our standard of review is whether the court's ruling was "arbitrary or unreasonable." *Terr v. Duddleston*, 641 S.W.2d at 579, citing, *Landry v. Travelers Insurance Co.*, 458 S.W.2d 649 (Tex.1970). The trial court acted well within its discretion and with infinite patience in requiring Doris to be deposed and in requiring Kidd to produce the requested documents.

■ Due to the overall nature and circumstances of Kidd's cause of action it was necessary for appellees to depose Doris. It was her knowledge of Kidd's trade secrets that Campagna was allegedly using for appellees benefit. At the crucial time of Campagna's employment Doris was the president of Kidd. She was supposedly the sole possessor of all knowledge concerning Kidd's secrets in the manufacturing of polyurethane products; therefore, she would be the only person who could testify as to what information, if any, that Campagna obtained for the use and benefit of appellees. Appellees maintained throughout there are no such secrets. Doris was furnished an office by Kidd, although her husband is now the nominal President.

She remains the largest if not the sole stockholder. She admitted she had access to Kidd's records for her own use.

■ As to the requested documents we find that as long as Kidd's right against unauthorized or harmful disclosure or dissemination of trade secrets were protected by a court order, there is no reason why Kidd should not produce the requested documents. *Firestone Photographs, Inc. v. Lamaster*, 567 S.W.2d 273, 278 (Tex.Civ. App.—Texarkana 1978, no writ). The trial court, after hearing the arguments of counsel made a decision on discoverable matters. The discovery order signed on July 12th limited the information requested by appellees so as to not disclose trade secrets. It can readily be seen that this information was needed by the appellees to enable them to defend themselves from the allegation by Kidd that they were using information obtained by Campagna, while in the employment of Kidd, as to customers of Kidd and their needs. Additionally, this discovery order was supposedly agreed to by all counsel of record. Kidd wants to sue appellees on one hand and deny appellees discovery essential to their defense on the other. The court was not "arbitrary or unreasonable" in ordering Doris to appear for deposition or in requiring Kidd to produce the requested documents.

■ We now turn to whether the trial court abused its discretion in dismissing appellant's case. The trial court had the authority to use sanctions to not only secure compliance with discovery orders and rules, but to penalize those who abuse the discovery process. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Downer v. Aquamarine Operators*, 701 S.W.2d 238 (Tex.1986); *Jarrett v. Warhola*, 695 S.W.2d 8 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd). Tex.R. Civ.P. 215 (Vernon Supp.1986). On appeal our review is limited to the question of whether the court acted without reference to any guiding rules and principles in its decision such that it abused its discretion. *Downer v. Aquamarine Operators*, 701

S.W.2d at 241, citing from *Craddock v. Sunshine Bus Line*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.—1939, opinion adopted). In *Downer*, the defendant had repeatedly delayed the discovery process by not having its tugboat crew available for depositions. The supreme court held that the trial court was free to weigh all the factors surrounding why the crew had not been made available for deposition before deciding whether to levy sanctions. The supreme court held that there was nothing in the record to show that the trial court's action in striking defendant's answer as a discovery abuse sanction was capricious, arbitrary or unreasonable. *Downer v. Aquamarine Operators Inc.*, 701 S.W.2d at 242–43.

Appellant in this case consistently failed to respond to appellee's discovery requests. Doris avoided having her deposition taken for over two and one half years. During that time she failed to comply with two orders by the court to appear for deposition, she ignored a notice of deposition causing appellees to file a certificate of non-appearance and ignored the initial agreement between counsel made on November 9, 1982, to have her deposition taken. She finally obeyed a bench order and appeared for deposition on May 17, 1985. At this deposition she was unresponsive to most questions, claimed that she was now not an officer or agent of Kidd, arrived with an attorney who was separate and apart from Kidd's attorney and then during the deposition she allegedly became mentally incapable of giving her deposition. The only record before us is the continued refusal of Doris to appear for deposition until May 17, 1985, wherein she was unresponsive and uncooperative. As to her claim that she is now a non-party witness we find no merit. When Doris Davis' deposition was originally requested she was the president of Kidd and could have been deposed as a party. Kidd may not now avoid discovery by disavowing any relationship with her. Any question of fact as to her mental or physical condition has been decided against Kidd by the trial court. Kidd may not use its own disregard of the deposition process to achieve a more favorable position.

As to the request for production we find that Kidd never produced the documents requested. There are no Motions for Protection, Motions to Quash or Motions for In-Camera Inspection in the record. Kidd was ordered by the court at several hearings to produce the requested documents. Finally, at the hearing held on July 12, 1985, an agreement was reached as to the information to be produced. But even after this agreement, Kidd still failed to produce the requested information.

Appellant's behavior caused appellees to file numerous motions for compliance with discovery and resulted in several written court orders. The record is replete with appellant's disregard of the discovery rules and valid orders of the court. The trial court was not capricious, arbitrary or unreasonable. Therefore, the trial court did not abuse its discretion in dismissing appellant's case.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.