**GARCIA DISTRIBUTING, INC., and Eddie Garcia, Individually, Appellants,**

v.

**FEDDERS AIR CONDITIONING, USA, INC., d/b/a Fedders USA and Fedders Corporation, Appellees.**

No. 04–88–00430–CV.

Court of Appeals of Texas, San Antonio.

July 19, 1989.

James William Blagg, Edward N. Daneri, San Antonio, for appellants.

Sharon E. Callaway, San Antonio, for appellees.

Before BUTTS, REEVES and BISSETT,[1] JJ.

## OPINION

BISSETT, Justice (Assigned).

The question to be resolved in this appeal is whether the trial court abused its discretion in striking Garcia Distributing, Inc.'s and Eddie Garcia's claims for fraud and for actual damages because of discovery abuse. We answer the question in the negative.

The appellants Garcia Distributing, Inc. and Eddie Garcia, in their brief, offered this Court approximately thirteen pages of factual statements (thirteen references to be exact, several of which refer to the identical page and volume of the transcript or the statement of facts, as the case may be). Some of the factual statements do not have any basis in the record, such as the conversations between the attorneys for the parties; some are immaterial to the instant appeal in that no evidence was presented to the trial court of the distributorship dealings between the parties to this lawsuit. They are mere statements with no relevance to the discovery sanction asserted as error in this appeal. This Court will not expend its time searching through a 758–page transcript and a 3–volume statement of facts to determine if such factual statements have any foundation in the record. On the other hand, the brief of Fedders Air Conditioning, USA, Inc., d/b/a Fedders USA and Fedders Corporation, ap-

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas, pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

pellees, is adequately and properly referenced. We, therefore look to the statements made in that brief in setting out the nature, factual background and procedural history of the case.

In the interest of clarity, the parties will hereafter be referred to as "Fedders" (including both Fedders USA and Fedders Corporation) and "Garcia" (including both Eddie Garcia, Individually, and Garcia Distributing, Inc.) except where a distinction is necessary.

In February of 1987, Fedders sued Garcia Distributing, Inc. for payment on an open account and breach of contract, and Eddie Garcia, Individually, for enforcement of a personal guarantee. Attorney fees were sought against both Eddie Garcia and Garcia Distributing. In July of 1987, Fedders also sued Thousand Oaks National Bank for a breach of a letter of credit issued in behalf of Garcia Distributing, Inc. In August of 1987, Thousand Oaks counterclaimed against Fedders and filed a cross-action against Garcia. It amended its answer to include counterclaims against Fedders for breach of contract, fraud, interference with contractual relations, and wrongful termination of a distributorship agreement. The two cases were consolidated in February of 1988. On April 4, 1988, Fedders and Thousand Oaks dismissed their causes of action against one another, and Fedders nonsuited its causes of action against Garcia. That left pending Thousand Oaks' cross-action against Garcia and Garcia's counterclaims against Fedders.

Judge Peeples, by order signed on June 3, 1988, granted Fedders' second motion for sanctions and struck the claims of fraud prior to the distributorship agreement asserted by Garcia in their counterclaims against Fedders with prejudice to refiling of same, and further struck Garcia Distributing, Inc.'s claim for $750,000.00 as damages against Fedders with prejudice to refiling same.

Subsequent to the rendition of the sanctions order of June 3, 1988, Garcia filed its fifth amended counterclaim (June 14, 1988) against Fedders. It alleged breach of contract, negligence, breach of duty of good faith and fair dealing, tortious interference with contract, violations of the Deceptive Trade Practices–Consumer Protection Act and the Business Opportunity Act, and the usury claim.

The case was called for trial before Judge Peter Michael Curry on June 27, 1988. Fedders announced ready and Garcia's attorneys described Judge Peeples' discovery sanction order to Judge Curry, asking that the trial court render judgment dismissing the case with prejudice for discovery abuse so that they could appeal Judge Peeples' order. The attorneys for Garcia argued that it was useless for them to go to trial on their claims when they could not win any damages because under the dismissal order they could not present any evidence of damages on any claim for fraud "that we had."

The attorney for Fedders announced to the trial court: "We are ready to hear what relief they (Garcia) are seeking from the court," and that Garcia had pled several causes of action other than fraud in their fifth amended counterclaim.

The trial court then announced:

... he (Fedders) has announced ready; you (Garcia) have announced ready; you (Garcia) put on no evidence. I grant judgment for Fedders ...

A take-nothing judgment in favor of Fedders was signed by Judge Curry on June 30, 1988. This appeal ensued.

Two points of error are brought forward. Garcia contends in its first point:

The trial court abused its discretion in dismissing with prejudice because the appellants did not act in bad faith and did not engage in a long course of conduct of discovery abuse and that no harm resulted to the appellees from appellant's conduct.

Garcia asserts in its second point:

The trial court erred in allowing such severe sanction since proper notice was not afforded by the contemplated sanctions to be sought.

On June 27, 1988, only Garcia's counterclaims against Fedders remained to be tried because of the settlements of Thou-

sand Oaks with Fedders and with Garcia and the nonsuiting of Fedders' claims against Garcia. The record shows that Garcia did not present any evidence when the case was called for trial by Judge Curry.

We now review the controlling discovery history of this case by setting out the following chronology of events:

3-11-88—Fedders served "Notice Duces Tecum of Intention to take oral depositions of Eddie Garcia and Garcia Distributing, Inc.," with specific lists of 35 categories of documents to bring with them at the taking of the deposition, and to designate at that time "persons knowledgeable and competent to testify regarding" the 35 categories.

3-24-88—An agreed order was signed by Judge Curry whereby Eddie Garcia and Garcia Distributing, Inc. were ordered to amend their Counterclaims by "stating all specific items of special damages and the maximum amount of these special damages; and stating the maximum amount of actual damages and punitive damages sought."

3-30-88—Fedders filed a motion to strike Garcia's Counterclaims for failure to amend its pleadings in accordance with the agreed order of 3-24-88, and for Garcia's giving incomplete answers and failing to list assets in response to Fedders' First Set of Interrogatories; for failure to produce income tax returns, books, and ledgers in response to Request for Production; and for failure to bring requested documents to Eddie Garcia's deposition in response to duces tecum notices both for Eddie Garcia and Garcia Distributing, Inc.

3-30-88—Garcia filed its Fourth Amended Answer and Counterclaim in an effort to comply with the Order of 3-24-88, which ordered Garcia to file its amended pleadings by the "close of business on March 28, 1988."

3-30-88—Garcia, by letter, advised Fedders that neither Mario Sanchez nor Henry Garcia will agree to appear for deposition even though Garcia, upon deposition, maintained that he did not know or have access to the financial information supporting damages, but that his accountant Sanchez did.

4-7-88—Fedders filed a motion to quash three deposition notices because Garcia had served supplemental answers on 4-1-88 naming 18 previously undisclosed persons with knowledge of relevant facts and was now trying to take depositions of 3 of those persons on 4-8-88 even though case was specially set for trial for 4-11-88 by agreement.

4-18-88—Fedders filed its second motion for sanctions. It recited that it sent its second set of interrogatories to Garcia on 4-12-88, which were received by Garcia on 4-12-88; Garcia's responses were due on 5-12-88 and the requested documents were to be produced on 5-13-88; on 4-15-88, Garcia received Fedders second request for production of documents, and its responses were due by 5-16-88; Garcia had not filed any responses to either the interrogatories or the request for production of documents by May 18, 1988, at 4:18 p.m., when the second motion for sanctions was filed.

4-18-88—Fedders' second motion for sanctions was set for hearing at 8:30 a.m. on 5-23-88.

5-19-88—Garcia's responses to Fedders' second set of interrogatories and request for production of documents were delivered to Fedders.

5-20-88—Garcia's supplementary responses to Fedders' second set of interrogatories were delivered to Fedders.

Eddie Garcia testified at the hearing on Fedders' second motion for sanctions, which was held on May 23, 1988. He told the court on direct-examination: 1) he received the second set of interrogatories and request for production of documents about April 25 or 26 (1988), and he supplied his attorney with his answers and responses about May 17 or 18; 2) he had problems getting the information together because his secretary had been sick and had been out of his office for "the last four weeks"; 3) he was "never showed how to do the

documents"; 4) he was "never showed how to do the credit memos"; and 5) prior to entering into the distributorship agreement with Fedders, he had a credit line of $300,-000.00 and "when all this happened it ruined my relationship with the bank and damaged my credit totally." On cross-examination, Eddie Garcia was most evasive in his answers to questions propounded to him by the attorney for Fedders; most of his answers, in essence, amounted to excuses because of what his employees did or did not do. Judge Peeples asked Eddie Garcia: "Why do you need these people in order for you to say who made representations to you that were false?" That question was never answered by him, although his attorney then said: "primarily, the question was putting things together." Following arguments by the attorneys, Judge Peeples announced:

> The fraud counterclaim is stricken. No evidence will be permitted on fraud. Whatever else is in the case remains … in addition, the claim for $750,000.00 (damages for fraud) is stricken. That leaves a few counts that haven't been dealt with, but I don't think the discovery abuse dealt with that … I find that there has not been good faith compliance with discovery requests five weeks before trial … the jury setting is not dropped; it's still set for June 27th (1988).

Letters from the attorneys for Garcia to the attorney for Fedders, dated May 13, 1988 and May 17, 1988, although marked and numbered for identification at the May 23, 1988 hearing, were never introduced in evidence. Copies were filed in this Court on October 4, 1988. We do not consider them in disposing of the appeal since they were not before Judge Peeples at the hearing.

A motion for reconsideration and clarification of the announcements made by Judge Peeples at the May 23, 1988 hearing was filed by Garcia on May 26, 1988. Judge Peeples, at the hearing on the motion, stated that he would limit the announcements made by him at the May 23, 1988 hearing to the fraud "prior to the distributorship agreement." The order

granting Fedders' second motion for sanctions against Garcia was signed on June 3, 1988. It decreed:

1. Eddie Garcia and Garcia Distributing, Inc.'s claim of fraud and fraudulent representations prior to the distributorship agreement against Fedders USA are stricken with prejudice to refiling of same;

2. Garcia Distributing, Inc.'s claim of $750,000.00 in actual damages against Fedders USA is stricken with prejudice to refiling of same; and

3. Eddie Garcia's claim of $750,000.00 in actual damages against Fedders USA is stricken with prejudice to refiling of same.

Garcia, in its brief, asserts that Judge Peeples did not take into account its responses and supplementary responses before rendering the sanctions order. To the contrary, such responses were offered as exhibits at both the May 23rd hearing and the motion for reconsideration and clarification hearing of June 3rd. The evasive and incomplete nature of such was discussed at great length with the court by the attorneys for the parties at both hearings.

TEX.R.CIV.P. 215 § 2(b)(5) (Vernon Supp.1989) provides that upon proper motion for sanctions, the trial court may strike the pleadings, or any part thereof, of a party who fails to comply with proper discovery requests. Once it is shown that a party has violated the provisions of the Rule, the trial court, not an appellate court, has the discretion to impose any of the sanctions set forth in the Rule. *Medical Protective Co. v. Glanz,* 721 S.W.2d 382, 387 (Tex.App.—Corpus Christi 1986, writ ref'd). The trial court's order imposing sanctions will not be disturbed on appeal unless there is a clear showing of an abuse of discretion. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986). The trial court, in selecting the appropriate sanction, is not limited to considering only the specific complaint for which the sanctions were imposed, but may consider everything that has occurred up to the

granting of sanctions. *Overstreet v. Home Indemnity Co.*, 747 S.W.2d 822, 826 (Tex. App.—Dallas 1987, writ denied). Severe sanctions are available to the trial court to secure compliance with discovery rules, and to prevent cases from dragging on and on in the courts. *Haber Oil Co., Inc. v. Stanley Swabbing & Well Service, Inc.*, 741 S.W.2d 611, 613 (Tex.App.—Beaumont 1987, no writ).

■ Our Supreme Court, in *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), speaking through Justice Wallace, said:

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. * * * The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. (Citations omitted).

Deterrence of others by example is a proper consideration for the imposition of sanctions by way of striking the pleading of a party. *Sutton v. State Bar of Texas*, 750 S.W.2d 853, 854 (Tex.App.—El Paso 1988, writ denied). A party who does not timely answer interrogatories or respond to a request for the production of documents, as is the case here, is not immune from the imposition of sanctions by filing late but prior to the hearing on the opposite party's motion for sanctions. *Southern Pacific Transportation Co. v. Evans*, 590 S.W.2d 515, 518–19 (Tex.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

■ The Supreme Court, by its refusal to grant a writ of error, has made it clear that the imposition of the severest sanction (order of dismissal) is not an abuse of discretion in circumstances similar to those presented in this case. *See Jarrett v. Warhola*, 695 S.W.2d 8 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd), where it was held that the trial court did not abuse its discretion in dismissing a case because the plaintiff failed to timely comply with the discovery orders by the court. The Supreme Court's clear message about discovery sanctions has been uniformly implemented by the courts of appeal. *See, e.g., Gutierrez v. Walsh*, 748 S.W.2d 27, 27–28 (Tex.App.—Corpus Christi 1988, no writ); *Kidd Pipeline & Specialties, Inc. v. Campagna*, 712 S.W.2d 238, 241–42 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *De La Garza v. Express–News Corp.*, 722 S.W.2d 251, 253 (Tex.App.—San Antonio 1986, no writ). "Rule 215 does not require any particular proof of harm but only that the Court find the sanctioned party to have abused the discovery process in resisting discovery." *Woodruff v. Cook*, 721 S.W.2d 865, 869 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Garcia's excuse that its attorney was attempting to keep opposing counsel "informed" by letter was expressly rejected in *City of Houston v. Arney*, 680 S.W.2d 867 (Tex.App.—Houston [1st Dist.] 1984, no writ), where the court held that a default judgment was not an abuse of discretion even though the missing discovery had been produced late. It is quite clear that eventual full compliance after the deadline does not make imposition of the severest sanction an abuse of discretion. *See Drozd Corp. v. Capitol Glass & Mirror Co.*, 741 S.W.2d 221, 223 (Tex.App.—Austin 1987, no writ).

The record in the instant case shows that Garcia consistently delayed the progress of this case by responding to discovery late, or by giving incomplete or evasive answers when it finally responded to the interrogatories and requests for production of documents. Eddie Garcia in his deposition, individually, and as the corporate representative of Garcia Distributing, Inc., failed to bring the documents requested by a very specific duces tecum list, even though no motion for protection or objections had been filed to any of the requests. In addition, in both his answers to interrogatories and to questions asked him when he was deposed, when the subject concerned factual data bearing on the claims for damages because of the alleged fraud by Fedders

arose, his answers were: "I don't know"; "I have to refer back to the records"; "I would have to look at the files"; and "I couldn't answer you'll have to find out from the accountant on this." The testimony of Eddie Garcia at the hearing on Fedders' second motion for sanctions, at only five weeks before trial, was still evasive and did not give Fedders fair notice of the facts constituting the fraud and fraudulent representations upon which the damage claims, totalling $1,500,000.00, were made. Fedders was entitled to such information in order to adequately prepare a defense to those claims. It did not get that information from Garcia. In summary, Garcia did not tell Fedders the facts supporting the claims of fraud or fraudulent representation or the basis for the damages sought because of fraud. It would be manifestly unjust and unfair to permit Garcia to wait until the day of trial and then produce evidence supporting the claims for $1,500,-000.00 as damages, which was not furnished to Fedders through legitimate discovery requests. Judge Peeples did not abuse his discretion in granting Fedders' second motion for sanctions and in striking Garcia's claims for actual damages for fraud which occurred prior to the distribution agreements. The first point of error is overruled.

As noted, Fedders filed its second motion for sanctions on May 18, 1988. Attached to that motion is a fiat, signed by the judge presiding, which stated that the motion was set for hearing at 8:30 a.m. on May 23, 1988. Fedders' attorney's certificate of service recites that a true copy was hand-delivered and a true copy was mailed to the attorneys for Garcia on May 19, 1988. All attorneys appeared at the hearing; Garcia testified at the hearing. Judge Peeples announced his decision at the hearing, although the written order was not signed until June 3, 1988. Fedders, in the motion, moved the court "to impose sanctions against Garcia for failure to answer discovery by striking Garcia's counterclaim in its entirety." The court struck *only* the counterclaim insofar as the claims for actual damages for fraud committed prior to the distributorship agreements. The other

causes of action pled by Garcia in its fifth amended counterclaim were not affected. Garcia's motion for reconsideration and clarification of the announcement made by Judge Peeples was filed on May 26, 1988. A hearing on that motion was held on June 3, 1988, the same day that the order imposing the sanctions complained of was signed.

Garcia's complaint in his second point of error stated that "the trial court erred in allowing such severe sanctions since proper notice was not afforded of the contemplated sanctions to be sought" does not have merit. The point is overruled.

The judgment of the trial court is affirmed.