Don T. BRADEN and E.M. Schulze,
Jr., Appellants,

v.

SOUTH MAIN BANK, Appellee.

No. B14–91–01277–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 13, 1992.

Rehearing Denied Sept. 10, 1992.

E.M. Schulze, Jr., Hunstville, for appellants.

Randall A. Pulman, Houston, for appellee.

Before MURPHY, ROBERTSON and CANNON, JJ.

## OPINION

MURPHY, Justice.

The parties entered into an agreed interlocutory judgment as to the merits of this lawsuit on July 24, 1990. It was incorporated into a final judgment signed by the trial court on July 25, 1991, pursuant to South Main Bank's (the Bank) Motion for Entry of Final Judgment. The judgment settled all disputes between the parties except for the trial court's imposition of discovery sanctions, which are the subject of this appeal. The judgment of the trial court is affirmed as modified.

In 1988, Don T. Braden filed suit against the Bank and others in Montgomery County. The Bank took Braden's deposition on September 20, 1988. At the deposition, Braden was evasive and conferred with his attorney over sixty times. *Braden v. Downey*, 811 S.W.2d 922, 927 (Tex.1991). In February of 1989, the Bank filed a motion to transfer venue to Harris County. This motion was granted. Because of the lack of information gained through the deposition process, the Bank sought additional facts through written discovery. In fact, Braden's attorney, E.M. Schulze, Jr., "suggested" during Braden's deposition that the Bank should seek its information through interrogatories. In June of 1989, the Bank served Braden with its first set of interrogatories, requests for production of documents, and requests for admissions. Braden timely responded on July 18, 1989.

The case was subsequently consolidated with a suit pending in Harris County which the Bank had previously commenced against other persons involved in the transactions out of which the litigation between Braden and the Bank arose. On November 16, 1989, after the consolidation, the Bank filed a motion to compel answers to interrogatories and requests for production and for sanctions. The Bank asserted that the responses, couched as objections, were frivolous and harassing. The motion sought $500 in attorney's fees under Tex.R.Civ.P. 215(1)(d), a dismissal of Braden's suit if he failed to comply within 20 days, and for any other relief to which the Bank might be entitled. On December 18, 1989, more than thirty days after this motion was filed and served, a hearing was held before the Honorable Daniel M. Downey, the presiding judge of the 295th Judicial District Court. As the docket was called, Judge Downey warned the lawyers on both sides that he believed discovery abuses were occurring, and that if he had to rule on the interrogatories in question someone would be sanctioned.[1] The trial court did not give any indication as to which party or attorney was in danger of being sanctioned. The warnings prompted both attorneys to leave the courtroom in an attempt to settle the discovery disputes. The attorneys returned to the courtroom without having reached an agreement. At that time, the trial court considered the Bank's motion to compel and for sanctions. The court went through the interrogatories to which Braden had objected. The objections made by Braden to many of the interrogatories in question were substantially as follows:

> This interrogatory is objected to because it is vague, ambiguous, overly broad, nonspecific, and unduly burdensome in requesting this party to "state all facts relied upon" in denying the claim. Under the Texas Rules of Civil Procedure the number of questions including subsections in a set of interrogatories shall be limited so as not to require more than thirty answers. An interrogatory re-

---

**1.** The warnings were off the record; however, they were placed on the record at a later hearing as best as the parties and the court could remember.

questing a party to "state all facts" in essence requests a party to state the entire substance of all testimony, documents, and other evidence which may be offered at trial. This would of necessity involve a narrative discourse encompassing more than thirty answers and would require the disclosure of work product.

Braden would also respond that he had been questioned extensively about the matter in his deposition and to require him to respond again would be unduly burdensome. To other interrogatories Braden objected on grounds of relevancy or contended that the interrogatories required more than thirty answers, the limit set by TEX. R.CIV.P. 168. Out of the many interrogatories posed, Braden responded to approximately ten. The remaining interrogatories were objected to on one or more of the grounds stated above. The trial court agreed with Braden that the interrogatories violated Rule 168 because more than thirty answers were required. To remedy this, the trial court ruled on the interrogatories until it reached the thirty answer limit. The Rule 168 objection was the only objection sustained by the trial court. The trial court criticized Braden's other objections and overruled them. After hearing arguments from both sides, the trial court found that both parties were abusing the discovery process in seeking and resisting discovery. On January 3, 1990, the trial court issued an order in which it found that Braden's answers to the interrogatories were unreasonably frivolous, oppressive and harassing. The trial court then ordered Braden to pay $10,000, as a sanction, to the Bank within 30 days and ordered Braden to answer the interrogatories and produce the requested documents. The court also ordered Braden's attorney to perform ten hours of community service at Child Protective Services of Harris County as a sanction. The attorney for South Main Bank was ordered to perform five hours of community service at Child Protective Services, apparently for violating Rule 168 and for combining all of the discovery requests in a single document. The court ordered that the community service

be performed by both attorneys before February 15, 1990.

The Bank's attorney performed the community service ordered by the court and Braden timely complied with the trial court's order compelling answers to interrogatories and production of documents. However, appellants Braden and Schulze filed a Motion for Leave to File Petition for Writ of Mandamus in the Court of Appeals challenging the $10,000 sanction and the community service imposed on Schulze, but leave was denied. Appellants then filed a similar motion in the Texas Supreme Court. It granted appellants leave to file and conditionally granted a writ of mandamus "to direct Judge Downey to modify his order to defer payment of monetary sanctions and performance of community service until final judgment is rendered to allow Braden an opportunity to appeal." *Braden,* 811 S.W.2d at 930. The Supreme Court did not make a specific determination regarding the propriety of the sanctions. The trial court conformed its final judgment to reflect the decision of the Supreme Court. On July 25, 1991, the trial court signed the final judgment from which Braden and Schulze appeal.

In their first point of error, appellants allege that the trial court erred in imposing sanctions against them because the objections to the discovery requests of the Bank were made prior to the time when the Harris County trial court acquired jurisdiction.

Rule 215(2)(b) states that if a party fails to comply with a discovery request, the "court in which the action is pending" is authorized to enter orders concerning the matter. TEX.R.CIV.P. 215(2)(b). Further, Rule 215(3) states that the authority to impose sanctions for abuse of the discovery process is conferred upon "the court in which the action is pending." TEX.R.CIV.P. 215(3). Appellants contend that since the original discovery requests were propounded and objected to prior to the consolidation, Judge Downey was without jurisdiction to sanction them for any abuse of the discovery process. Appellants argue that the phrase "the court in which the action is

pending" refers to the court in which the action is pending at the time the alleged abusive conduct occurs. We disagree with this interpretation.

Changes of venue, consolidations, and transfers of cases are everyday occurrences. These often occur when the parties are well into the discovery process. If we accept the argument made by appellants, the parties would be required to return to the original trial court for a determination as to the discovery abuse and for appropriate sanctions. Or, as appellants suggest, we should restrict the power of the trial court that finally acquires jurisdiction and allow it to consider only that alleged abuse which takes place after it acquires jurisdiction. Neither of these approaches is practical. We refuse to accept appellants' hypertechnical construction and hold that the phrase "the court in which the action is pending" means just that. Appellants' first point of error is overruled.

In point of error number two, appellants allege the trial court erred in imposing sanctions against them because it is not an abuse of the discovery process to state objections to discovery requests.

■ Appellants cite the Texas Disciplinary Rules of Professional Conduct and the Texas Lawyer's Creed in support of their argument and claim that if the objections had not been made, Schulze would not have been "zealously" representing Braden as required. However, the Disciplinary Rules do not authorize an attorney to make frivolous and harassing objections to discovery requests. In fact, this conduct is specifically mentioned in Rule 215. TEX.R.CIV.P. 215(3). The rule states, in pertinent part:

If the court finds a party is abusing the discovery process in seeking, making or resisting discovery or if the court finds that any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing, *or that a response or answer is unreasonably frivolous or made for purposes of delay, then the court in which the action is pending may ... impose any appropriate sanction ...*

TEX.R.CIV.P. 215(3) (emphasis supplied). Appellants' argument suggests that because the rule does not mention objections, any response or answer is not subject to sanctions if it is couched in terms of an objection. If this were the law, litigants could delay and obstruct the discovery process perpetually through objections, no matter how absurd those objections might be, without fear of penalties. This is not the law in Texas. We hold that the reference in Rule 215(3) to answers or responses includes responses in the form of objections and as such, are subject to sanctions as are any other responses. Appellants' second point of error is overruled.

■ In their third point of error, appellants allege the trial court erred in imposing sanctions against them because the objections to the discovery requests were not frivolous and as a result, there was no factual basis for the trial court to find an abuse of the discovery process. Our review of the record bears out the trial court's finding that most of the objections made by appellants were frivolous and harassing. One glaring fact is that appellants made the same exact objection to almost all of the interrogatories posed by the Bank. That objection was set out in full earlier in this opinion. In *Braden v. Downey,* the mandamus action involving this very contention, the Supreme Court stated that because Braden was "less than forthcoming" in his deposition, he foreclosed any subsequent objection to interrogatories on the ground that the Bank requested information provided in the deposition. *Braden,* 811 S.W.2d at 927. The court also held that the Bank's interrogatories were not so vague that it was an abuse of discretion for the trial court to order that they be answered. *Id.* at 927–28. Besides, the trial court sustained Braden's objections that the interrogatories exceeded the thirty answer limit set by Rule 168, and the Supreme Court held this rule establishes a boundary for the type of "contention interrogatories" posed by the Bank. *Id.* Therefore, Braden was sufficiently protected from any vague interrogatories. Lastly, Braden never asserted or presented any evidence on any applicable privilege. The

Supreme Court concluded that Braden failed to demonstrate that the trial court abused its discretion in ordering him to answer the Bank's discovery requests. The record supports this holding and the further holding that there was a sufficient factual basis for the trial court to conclude that appellants' objections were harassing and subject to sanctions. Appellants' third point of error is overruled.

In point of error four, appellants argue that the trial court erred in imposing sanctions against them because they were not provided with timely, advance notice that the trial court would consider the discovery abuse issue. Appellants allege this lack of notice denied them procedural due process. Appellants claim that they did not know that the trial court was going to "review their conduct under the abuse of discovery concept." They also argue that they were unaware that any monetary fine or community service might be imposed. Appellants claim that the only notice they had that their conduct was going to be reviewed by the court and that they might be sanctioned for such conduct was an off the record, ambiguous warning by the trial court. The arguments propounded by appellants are tenuous at best when the record is reviewed.

On November 16, 1989, the Bank filed and served on the appellants, their Motion to Compel Answers to Interrogatories, Production of Documents, *and for Sanctions*. In this motion, the Bank claimed that Braden's responses to interrogatories were evasive and incomplete and therefore constituted a failure to answer. In its prayer, the Bank asked the trial court to compel Braden to answer certain interrogatories and requests for production; asked that a default judgment be entered in their favor if Braden failed to respond to the discovery requests within 20 days; and requested $500 in attorney's fees and any other relief to which it might be entitled. A cursory review of the caption of the motion, the motion itself, and the prayer for relief were sufficient to put the appellants on notice that conduct during discovery was going to be reviewed by the trial court, and that the Bank was seeking sanctions. *See Wood-*

*ruff v. Cook*, 721 S.W.2d 865, 870 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Also, the transcript of the hearing held on December 18, 1989, reveals that the purpose of the hearing was to hear the Bank's motion to compel. At no time during the course of the hearing did Schulze object and argue that neither he nor his client had received adequate notice.

 Imposing sanctions on a party without notice and an opportunity to be heard would violate the requirements of due process. *See Worldwide Anesthesia Assoc., Inc. v. Bryan Anesthesia, Inc.*, 765 S.W.2d 445, 448 (Tex.App.—Houston [14th Dist.] 1988, no writ). Here, appellants were well aware of the nature of the motion filed by the Bank and were aware that the purpose of the hearing was to make a determination as to that motion. Appellants were given notice of the hearing more than thirty days before it was held and were afforded all the due process they were entitled to. Appellants' argument is without merit, and point of error four is overruled.

In their sixth point of error, appellants contend the trial court erred in imposing sanctions against them because the type of sanctions that were imposed are not proper until the court has previously attempted to secure compliance with the discovery rules by less punitive means.

 In *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991), the Supreme Court held that a sanction imposed for discovery abuse should be no more severe than necessary to satisfy its purposes. 811 S.W.2d at 917. Thus, the court reasoned, trial courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id.* In *Braden*, the Supreme Court held that sanctions should not be so severe that a party's willingness or ability to continue the litigation will be significantly impaired. *See Braden*, 811 S.W.2d at 929. Appellants argue that based on the holdings in *TransAmerican* and *Braden*, the trial court abused its

discretion by failing to consider the imposition of lesser sanctions.

In *TransAmerican*, the trial court struck TransAmerican's pleadings in their entirety and rendered a default judgment in favor of Toma on its counterclaim. *Id.* at 916. The basis for this sanction was the failure of TransAmerican's president to appear for deposition. In effect, the trial court ordered the "death penalty" sanction for a single discovery abuse. The Supreme Court held that the trial court had abused its discretion and that the sanction imposed was unjust under Rule 215. *Id.* at 919.

Appellants also cite *Koepp v. Utica Mut. Ins. Co.*, 833 S.W.2d 514 (Tex.1992), in support of their argument. In *Koepp*, the trial court entered a take nothing judgment as a sanction for filing unverified and unsigned interrogatories one day late. *Id.* at 514. As in *TransAmerican*, the Supreme Court held that the trial court abused its discretion. *Id.* The court stated that sanctions which preclude the presentation of the merits of the case should not be assessed absent flagrant bad faith or callous abuse of the discovery process. *Id.* at 515. Both of these cases are distinguishable from the case before us.

In *TransAmerican* and *Koepp*, the Supreme Court was addressing situations where the trial court had imposed the "death penalty" sanction for a single discovery abuse. Here, no pleadings were struck and no default judgment was entered. Appellants were not prevented from presenting the merits of their case. When the Supreme Court in *TransAmerican* cautioned trial courts to consider the availability of less severe sanctions, we do not believe the court was referring to the type of sanctions imposed here. Rather than imposing the "death penalty" sanction, the trial court imposed a monetary sanction and community service. Thus, a sanction "less severe" than the "death penalty" was imposed.

In regard to appellants' argument under *Braden*, we believe that appellants have quoted the language from the case out of context. Appellants state that the Supreme Court characterized the sanctions in this case as being so severe as to raise "the real possibility that a party's willingness or ability to continue the litigation will be significantly impaired." *Braden*, 811 S.W.2d at 929. However, in the sentence prior to the one quoted by the appellant, the Supreme Court qualifies its statement by stating that a sanction of the magnitude as the one in this case raises the possibility that the ability to continue the litigation will be impaired *if it must be paid before any opportunity for supersedeas and appeal. Id.* (emphasis supplied). Thus, the concern over the sanction in this case arose not over the amount of the sanction, but concerned whether a sanction of this amount must be paid prior to the opportunity for supersedeas and appeal. The Supreme Court cured this error in the mandamus action by requiring the trial court to delay the imposition of the sanctions until appellants were granted an opportunity for direct appeal. *Id.* at 930–31. Since the sanction order was stayed, it could not have had a chilling effect on appellants' ability or willingness to continue the litigation.

We believe the Supreme Court's reference in *TransAmerican* to less severe sanctions to be a caution to trial courts to consider less severe sanctions before imposing sanctions such as dismissal, entry of default judgment or the imposition of a monetary fine so great as to chill a litigant's ability to maintain his suit. Appellants' sixth point of error is overruled.

■ In their ninth point of error, appellants allege that the trial court erred in imposing a monetary fine and community service as sanctions for discovery abuse because those sanctions are not specifically authorized by Tex.R.Civ.P. 215.

Rule 215(3) states that a trial court may impose any appropriate sanction authorized by Rule 215(2)(b)(1), (2), (3), (4), (5), and (8). Tex.R.Civ.P. 215(3). None of these sections refers to monetary fines or community service as possible sanctions, nor does Rule 215(3) contain the broad encompassing language "such orders as are just" as does Rule 215(2)(b). Because of this, the First District Court of Appeals held that when a

party is sanctioned under Rule 215(3), the trial court is limited to the sanctions specifically listed in Rule 215(2)(b). *Owens–Corning Fiberglas v. Caldwell,* 807 S.W.2d 413, 415 (Tex.App.—Houston [1st Dist.] 1991, no writ). However, in *TransAmerican,* the Supreme Court rejected the holding of the First Court of Appeals and held that paragraphs 2(b) and 3 leave the choice of sanctions to the sound discretion of the trial court. *TransAmerican,* 811 S.W.2d at 917. The court went on to state that by referring to paragraph 2(b), paragraph 3 incorporates the language in paragraph 2(b) and the trial court may make any orders that are just. *Id.* The court held that the only pertinent inquiry is whether the imposed sanctions under paragraph 2(b) or paragraph 3, are just. *Id.* Further, the Supreme Court, citing *Braden v. Downey,* specifically rejected the decision in *Owens–Corning* and held that the trial court does have authority to assess monetary fines as sanctions under Rule 215(3). *TransAmerican,* 811 S.W.2d at 921, n. 3 (Gonzalez, J., concurring); *see Braden,* 811 S.W.2d at 928–29. *But see Clone Component Distribs. v. State,* 819 S.W.2d 593, 597 (Tex. App.—Dallas 1991, no writ) (no citation to *TransAmerican* or *Braden* ).

Appellants are correct in their assertion that monetary fines and community service are not specifically mentioned as possible sanctions in Rule 215. *See* TEX.R.CIV.P. 215(2)(b). However, in light of the language in *TransAmerican* and *Braden,* a trial court is not limited to the laundry list of specifically authorized sanctions even when the sanctions are assessed under Rule 215(3). *TransAmerican,* 811 S.W.2d at 921, n. 3; *see Braden,* 811 S.W.2d at 928–29. Rule 215(2)(b) specifies eight sanctions, TEX.R.CIV.P. 215(2)(b)(1) through (8), as well as, in its introductory paragraph, "such orders in regard to the failure as are just." TEX.R.CIV.P. 215(2)(b). As long as the trial court's order is just and comports with the requirements of *TransAmerican,* the fact that the specific sanction assessed is not contained in Rule 215(2)(b) is not a ground for reversal whether sanction is assessed under Rule 215(2)(b) or 215(3).

Appellants' ninth point of error is overruled.

In point of error ten, appellants argue the trial court erred in imposing monetary sanctions and community service sanctions because paragraph (2)(b) of Rule 215 authorizing "such orders ... as are just" is vague. Appellants contend that under the circumstances of this case, the imposition of these sanctions under this standard is a denial of due process. We disagree.

■ Paragraph 2(b) has been reviewed in many contexts by the intermediate appellate courts of this state and the Texas Supreme Court. We have been unable to find any case where the courts were confronted with the specific question of whether paragraph 2(b) is vague. However, within the numerous holdings, we can find no hint that any Texas court considers "such orders ... as are just" ambiguous. This standard has long been accepted by the courts of this state as sufficient for reviewing the impositions of discovery sanctions. *See, e.g., TransAmerican,* 811 S.W.2d at 917. This standard is no more vague than other legal concepts such as "abuse of discretion." Even if it could be argued that the words, "such orders ... as are just," are vague in and of themselves, the Texas Supreme Court has cured any potential problem with the test set out in *TransAmerican.* In *TransAmerican* the court held:

In our view, whether an imposition of sanctions is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanctions imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanctions should be visited upon the offender.

. . . . .

Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent

sanctions and whether such lesser sanctions would fully promote compliance. *Id.* The court went on to state that the above standards would set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise sound discretion. *Id.* With such guiding principles propounded by the Texas Supreme Court, it is impossible to say that paragraph 2(b) is unconstitutionally vague. Appellants' tenth point of error is overruled.

In their eleventh point of error, appellants contend the trial court erred in imposing sanctions against them because the sanctions were not just or appropriate in this case.

 A trial court may impose sanctions on any party that abuses the discovery process. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986); TEX.R.CIV.P. 215. The discovery sanctions imposed by a trial court are within that court's discretion and will be set aside only if the court clearly abused its discretion. *Bodnow,* 721 S.W.2d at 840. Abuse of discretion occurs when the trial court fails to act with reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). Another way of stating the test is whether the act was arbitrary or unreasonable. *Id.* A trial court abuses its discretion in imposing discovery sanctions if the sanctions imposed are not just. *TransAmerican,* 811 S.W.2d at 917; *see* TEX.R.CIV.P. 215(2)(b). Whether sanctions are just is measured by two standards: (1) a direct relationship must exist between the offensive conduct and the sanction imposed; and (2) just sanctions must not be excessive. *TransAmerican,* 811 S.W.2d at 917. With these standards in mind, we will review the sanctions imposed on Braden and Schulze. Because the trial court assessed two types of sanctions, we will review the sanctions separately.

## MONETARY SANCTIONS

 The trial court ordered that Braden pay the Bank the sum of $10,000 as a sanction for abuse in resisting discovery under Rule 215(3). We note that no specific prayer for $10,000 was made by the Bank in its Motion to Compel and for Sanctions. The Bank prayed for $500 in attorney's fees and any other relief to which it might be entitled. The only statements made and the only evidence presented before the trial court entered its sanction order on January 3, 1991, came from the Bank's attorney. He testified that if the case was required to go to the court of appeals, his expenses would be $5,000. No other evidence was presented at this hearing as to monetary sanctions. Thus, there is nothing in the record showing any connection between the $10,000 awarded and any harm suffered by the Bank as a result of the alleged discovery abuse. *See Hanley v. Hanley,* 813 S.W.2d 511, 521 (Tex. App.—Dallas 1991, no writ). The record does not reflect that $10,000 was anything more than an arbitrary amount. It was not requested by the Bank, nor did the Bank put on any evidence to support the amount of $10,000. We hold that when a trial court assesses a monetary sanction, there must be some evidence in the record linking the amount awarded to harm actually suffered by the party seeking sanctions. The sanction imposed is not just because there is no direct relationship between the offensive conduct and the sanction imposed. *See TransAmerican,* 811 S.W.2d at 917. At the hearing held on July 9, 1991, the Bank's attorney did attempt to present evidence linking the $10,000 sanction to harm suffered by the Bank; however this evidence was presented approximately six months after the trial court had already awarded the $10,000 to the Bank. This was an attempt by the Bank's attorney to comply with the standards set forth in *TransAmerican.* In fact, the Bank's attorney stated on the record:

> Well, your Honor, in reading the Supreme Court opinion (sic) in Braden vs. Downey and in TransAmerica vs. Powell, I guess in order to made the record correct, assuming Mr. Schulze wants to take an appeal, I probably need to put on evidence as to some of the requirements or guidelines set forth in TransAmerica vs. Powell.

This "after the fact" evidence cannot be used to support the $10,000 sanction. The evidence was not before the trial court when the award was made and the record reflects that the trial court did not even consider this evidence. Therefore, we hold that the monetary sanction imposed against Braden is unjust and the trial court acted without reference to the applicable guiding rules. In light of our decision reversing the imposition of the monetary sanction, it is unnecessary to discuss appellants' points of error five and seven because they also challenge the monetary sanction imposed by the trial court.

## COMMUNITY SERVICE SANCTIONS

■■■■ The imposition of the monetary sanction was reversed by this court because there was no evidence presented by the Bank showing that the $10,000 was related to specific harm suffered by the Bank. In the case of the community service sanction, we do not believe that such evidence was required. As to this sanction, all we must determine is whether the sanction imposed was just. First we must determine whether the sanction imposed is related to offensive conduct in question. It is clear from the record that the sanctions in this case were imposed because Mr. Schulze responded to the Bank's interrogatories with harassing and frivolous objections. The record further shows, and the Supreme Court recognized, that Mr. Schulze's conduct through the discovery process was less than professional. *See Braden*, 811 S.W.2d at 927. As stated by the Supreme Court, a just sanction must be directed against the abuse and visited upon the offender. *TransAmerican*, 811 S.W.2d at 917. We hold that there is a relationship between the offensive conduct and the sanction imposed. Secondly, we must determine whether the sanction imposed was excessive. Mr. Schulze was ordered by the trial court to perform ten hours of community service at Harris County Child Protective Services. We believe this sanction is sufficient to satisfy the legitimate purposes of discovery sanctions. The purposes of discovery sanctions are to: (1) secure the parties' compliance with the rules of discovery, *Ebeling v. Gawlik*, 487 S.W.2d 187, 190 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ); (2) deter other litigants from violating the discovery rules, *Downer*, 701 S.W.2d at 242; *Garcia Distrib. v. Fedders Air*, 773 S.W.2d 802, 807 (Tex. App.—San Antonio 1989, writ denied); and (3) punish parties that violate the rules of discovery, *Jarrett v. Warhola*, 695 S.W.2d 8, 9–10 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd); *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986); *Stoll v. Rothchild*, 763 S.W.2d 437, 440 (Tex.App.—Houston [14th Dist.] 1988, writ denied). We were unable to find any Texas cases addressing this type of discovery sanction; however, we believe such a sanction can be just. In fact, this specific sanction was implicitly approved by the Texas Supreme Court in *Braden* when the court stated that it did not "criticize this type of creative sanction." *Braden*, 811 S.W.2d at 930. The community service sanction ordered by the trial court meets the standards set forth in *TransAmerican*. Therefore, the trial court did not abuse its discretion and its order as to the community service is affirmed.

Beyond their argument that the community service sanction was unjust, appellants contend in their eighth point of error that the trial court erred in imposing this sanction because it violates the provision of the U.S. Constitution prohibiting involuntary servitude except as punishment for a crime. *See* U.S. CONST. amend. XIII, § 1.

We have been unable to discover any cases, state or federal, which deal with this specific issue; however, we have found cases involving situations analogous to the one presented here. We first turn to cases involving assessment of sanctions under Federal Rule of Civil Procedure 11. The rule states, in pertinent part:

... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an *appropriate sanction.*

FED.R.CIV.P. 11 (emphasis supplied). This rule, much like TEX.R.CIV.P. 215(2)(b) and

(3), provides for sanctions in the event of abuses. Rule 11 also gives a court discretion in the type of sanction to be imposed. There is little difference between an "appropriate sanction" and a "just" sanction. Like sanction cases under Rule 215, Rule 11 sanction cases are reviewed using an abuse of discretion standard and district courts are admonished, as are Texas trial courts, to tailor the remedy to fit the abusive conduct. *See Jennings v. Joshua Ind. Sch. Dist.*, 948 F.2d 194, 196–97 (5th Cir. 1991) *cert. denied*, — U.S. —, 112 S.Ct. 2303, 119 L.Ed.2d 226 (1992). In determining whether certain sanctions are appropriate for Rule 11 violations, courts have held that non-monetary sanctions are acceptable, and in fact encouraged, if such sanctions promote Rule 11's purposes of education, compensation, and deterrence. *See Id.; Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 877–78 (5th Cir.1988) (en banc). In *Thomas,* the Fifth Circuit specifically mentioned the use of public or private reprimands as appropriate non-monetary sanctions, and the court stated that judges have broad discretion in choosing the appropriate penalty for Rule 11 violations. *Thomas,* 836 F.2d at 876–78. The court held that the considerable discretion vested in the trial court is authorized because of the use of the word "appropriate" in Rule 11. *Id.* at 876. We agree with the reasoning of the *Thomas* court, and hold that non-monetary sanctions are acceptable and authorized under the broad terms of Tex.R.Civ.P. 215. But, our inquiry cannot end here. Appellants do not complain that non-monetary sanctions are unacceptable, rather they contend the community service violates the involuntary servitude provision of the U.S. Constitution. Now that we have determined that non-monetary sanctions can be used for Rule 215 violations, we turn to appellants' specific argument.

█ The cases most closely analogous to the argument raised by appellants are income tax cases in which the Internal Revenue Service (IRS) has attached a taxpayer's wages to satisfy past due taxes. In such cases, taxpayers have alleged that attaching wages constitutes involuntary servitude under the 13th Amendment, i.e.

requiring the taxpayer to work on behalf of a governmental entity. Courts have expressly rejected this argument holding that any action taken or ordered by the IRS or a court stems from the conduct of the taxpayer and not from the party who ordered the attachment. *See Detwiler v. United States,* 406 F.Supp. 695 (E.D.Penn.1975), *aff'd,* 544 F.2d 512 (3d Cir.1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1136, 51 L.Ed.2d 557 (1977); *Beltran v. Cohen,* 303 F.Supp. 889 (N.D.Cal.1969). Therefore, the courts held that the concept of involuntary servitude was not invoked and such action by the IRS did not violate U.S. Const. amend. XIII, § 1. *Id.* These cases are comparable to the instant situation. It is not the action of the court which has created the situation. Rather, Mr. Schulze's own conduct brought about the community service sanction. When one's own conduct results in discovery violations which causes a community service sanction to be assessed, the 13th Amendment is inapplicable. We hold that community service sanctions do not violate the 13th Amendment and are available as sanctions under Rule 215. Appellants' eighth point of error is overruled.

The judgment of the trial court is affirmed as modified.