The **HILL AND GRIFFITH COMPANY,** Adams & Coffey, P.C., and Pamela Neale Williams, Appellants,

v.

Lloyd **BRYANT,** C.V. Sessions, Jimmy Dell Wyatt, and Jimmie Harper, Appellees.

Nos. 12–03–00091–CV, 12–03–00092–CV.

Court of Appeals of Texas, Tyler.

Jan. 21, 2004.

Wade C. Crosnoe, John Sepehri, Thompson Coe Cousins & Irons LLP, Dallas, for appellants The Hill and Griffith Company.

Thomas V. Murto, III, Stradley & Wright, Dallas, for appellants Adams & Coffey, P.C. and Pamela Neale Williams.

Richard I. Nemeroff, New York, NY, Lisa Renee Kivett, Kevin Duane McHargue, Baron & Budd, P.C., for appellees.

Panel consisted of WORTHEN, C.J., GRIFFITH, J. and DeVASTO, J.

## *OPINION*

JAMES T. WORTHEN, Chief Justice.

Appellants Hill and Griffith Company ("H & G"), Adams & Coffey, P.C. ("Adams & Coffey"), attorneys of record for H & G, and Pamela Neale Williams ("Williams"), an Adams & Coffey shareholder, appeal an award of monetary and community service sanctions for discovery abuse. In three issues, H & G contends that the trial court abused its discretion in ordering it to pay $17,500.30 as a sanction for discovery abuse. In two issues, Adams & Coffey and Williams contend that the trial court abused its discretion in ordering Williams to perform fifty hours of community service for withholding a document. We affirm.

## BACKGROUND

In April 2001, Lloyd Bryant, Jimmie Harper, Russell Shackelford, and C.V. Sessions ("Plaintiffs") filed suit against several companies, including H & G, for failing to warn of the dangers of silica. Plaintiffs alleged that their exposure to silica caused them to suffer serious illnesses and that H & G had sold these silica products to their employer, Tyler Pipe Industries, Inc. On November 14, 2001, Plaintiffs served H & G with interrogatories and requests for production of documents. Interrogatory number 15 specifically asked for details about any document relating to the potential health hazards of silica-based products and who with the company would have possession of each such document. Additionally, request for production number 4 asked H & G to produce all internal memoranda of any of its companies relating to the marketing of silica-containing products sold to Plaintiffs' employer.

H & G responded to interrogatory number 15 and request for production number 4 with virtually the same language, which in part stated:

"Defendant objects to this interrogatory [or request] because it is vague, ambiguous, overly broad and burdensome and is an impermissible 'fishing expedition' ".

Counsel for Plaintiffs and H & G verbally jousted back and forth over the ensuing months regarding H & G's lack of responsiveness to these and other discovery requests. Meanwhile, on July 18, 2002, the trial court entered its amended scheduling order and discovery control plan, which set the matter for trial on September 30, 2002. The jousting between counsel for Plaintiffs and H & G reached its peak in early August when Plaintiffs filed a motion to compel.

On August 30, 2002, the trial court held a hearing on Plaintiffs' motion to compel. At this hearing, Williams represented to the court that Adams & Coffey had turned over every document that H & G had provided to them in response to Plaintiffs' discovery requests. After hearing argument of counsel on each of the interrogatories and requests, including interrogatory number 15 and request for production number 4, the trial court overruled H & G's objection. The court also specifically ordered that interrogatory number 15 be fully answered and all documents relating to request for production number 4 be delivered to Plaintiffs' counsel by September 11, 2002. This deadline would ensure that the requested answers and documents were available for Plaintiffs' counsel's use in questioning the H & G executives and employees whose depositions were scheduled for September 18 and 19 in Cincinnati, Ohio.

On September 11 and 12, H & G delivered amended interrogatory answers and documents to Plaintiffs' counsel. The documents included copies of three warning labels relating to Red Chief Dry Core Paste, Pyrostal Classic, and EZ Dry Plastic Mold Spray, three of the silica-based products sold by H & G. Steve Neltner ("Neltner"), corporate manager of quality for H & G, appeared for his deposition on September 18. Neltner had been prepared for this deposition by David Eriksen ("Eriksen"), an attorney with the law firm of Thompson, Coe, Cousins & Irons, L.L.P. ("Thompson and Coe"). Although Williams was present at Neltner's deposition, Eriksen was responsible for interacting with Plaintiffs' counsel and for making objections and other statements for the record. Although neither Eriksen or Thompson and Coe were ever named as H & G's attorneys of record in the lawsuit, it is clear from the record that they were heavily involved in H & G's tactical and strategic preparation for trial.

During the deposition, Neltner intimated that there were interoffice documents about H & G's warning labels other than those that Plaintiffs' counsel had asked him about. Both during and after Neltner's deposition, Plaintiffs' counsel requested that any unproduced documents about H & G's warning labels be turned over in compliance with the trial court's ruling at the hearing on the motion to compel. H & G's counsel contended they had no other documents that were responsive to Plaintiffs' discovery requests. On the morning of Monday, September 30, pretrial began, and Plaintiffs' counsel filed a motion for sanctions against H & G for failure to produce the documents Neltner referred to in his deposition. Later in the afternoon, while pretrial continued in the case, H & G's counsel delivered to Plaintiffs' counsel an interoffice memorandum detailing the history of the labels previously produced and the development of warning labels by H & G in response to federal regulations ("Labeling Memo"). The Labeling Memo stated as follows:

To: Gary Follmer

From: Lori Yeager

Date: May 26, 1998

Subject: Product Labeling

In response to your request concerning product labeling, I have summarized to the best of my ability the history of our labeling process. In 1986 the Hazard Communication Standard was added to the OSHA Regulations. This standard required labeling of all containers within a facility that would be used by more than one employee for more than one shift. Hill and Griffith probably began labeling their products in accordance with this regulation. In 1987 the International Agency for Research on Cancer (IARC) found that there was sufficient evidence in laboratory animals that crystalline silica could cause cancer (IARC Designation 2A). This warning was added to all Material Safety Data Sheets (MSDS) and should have appeared on labels if the material did in fact contain some form of crystalline silica. The IARC recently changed the cancer designation for crystalline silica from a 2A to a 1 (known human carcinogen). We have changed the warning on our labels to reflect this change. MSDSs have been changed [and] are in the process of being distributed to our customers.

I did find current labels for Pyrostal (now known as Pyrostal Classic), EZ Dry Plastic Mold Spray, and Red Chief Dry Core Paste. I have no records for Silk Box, # 1 Ebony Core Compound, or Core Compound # 1.

For Premix Products, we began adding the silica warning to the Seacoal bags as of January 1, 1998. As soon as our current inventory is depleted, we will begin using the preprinted bags. The bags for Western Bentonite have had the warning on them, I would presume since 1987 when the IARC results were published. Kleen Kast should not have any crystalline silica in it. The Dow HV90 is a silicone emulsion. The MSDS for this product lists no known carcinogens and does not list crystalline silica as a hazardous ingredient.

Please let me know if I can be of further assistance. I hope this information helps you somewhat.

cc: Steve Neltner

The next day, Tuesday, October 1, while continuing to hear pretrial matters in the case, the trial court took up Plaintiffs' motion for sanctions. Plaintiffs' counsel explained to the trial court that Plaintiffs had been prejudiced by the withholding of the Labeling Memo because the memo was not available when the depositions of certain H & G executives and employees were taken in Cincinnati on September 18 and

19. Counsel informed the court that in a products liability case where failure to warn is alleged, a document discussing the thought processes in developing warning labels is relevant and an important part of discovery. Counsel further contended that H & G and their attorneys had taken active, overt steps to keep secret this Labeling Memo prior to the September 18 and 19 depositions. Consequently, Plaintiffs' counsel asked the trial court to strike H & G's pleadings. The trial court granted the motion for sanctions. However, the court stated that death penalty sanctions were inappropriate in the matter and informed the parties that it would not strike H & G's pleadings. The court recessed the sanctions hearing for approximately thirty minutes to allow the parties an opportunity to work out a settlement on sanctions. After the recess, Kent Adams ("Adams"), the lead attorney of record for H & G, requested more time to settle the sanctions issue, which the court allowed.

On Wednesday, October 2, Eriksen, after being briefed on the sanctions hearing by Adams, contacted Rick Nemeroff ("Nemeroff"), the lead attorney for Plaintiffs, in an attempt to agree on appropriate sanctions. The parties did not reach a settlement, and the trial court resumed the sanctions hearing late on the afternoon of Thursday, October 3. Jury selection had begun that same morning.

When the sanctions hearing resumed, Williams testified that she made the decision to withhold the document from Plaintiffs after H & G sent it to her in early September. However, she testified that Eriksen had been responsible for everything that took place at the deposition and the determination of which documents would be produced at that time. She further testified that she was not always privy to Eriksen's discussions with the H & G executives and employees regarding these documents. Nemeroff testified that Adams admitted to him that it was a mistake not to have turned over the Labeling Memo and acknowledged that the document was clearly responsive to the request for production. Nemeroff also testified that Adams told him Eriksen was probably the party most responsible for not having produced the Labeling Memo in a timely manner. Adams emphasized to Nemeroff that all issues related to the Labeling Memo that arose at the deposition were Eriksen's responsibility. None of the statements Nemeroff attributed to Adams in his testimony were rebutted by any other witness. Nemeroff also testified that the Labeling Memo would have been crucial in cross examining all of the H & G executives and employees who had been deposed during the week of September 16 in Cincinnati. He explained that most of the H & G witnesses had answered "I don't know" or "I don't remember" when they were asked about warning labels. If the Labeling Memo had been available, Plaintiffs' counsel could have shown it to the witnesses and asked additional questions.

At the end of the sanctions hearing, the trial court announced that as part of the sanctions for failure to produce the Labeling Memo, Plaintiffs' counsel would be allowed to retake the depositions of certain H & G witnesses. The court also informed the parties that Plaintiffs' counsel would be allowed to take the deposition of the author of the Labeling Memo for the first time. The court ordered that these depositions be taken on Saturday, October 5, to allow the trial to continue unabated. Further, the trial court ordered H & G to pay the travel expenses of Plaintiffs' counsel for the initial depositions taken in Cincinnati. The court also ordered H & G to pay for the time and expense of Plaintiffs' counsel in preparing and presenting the motion to compel, taking the depositions in

Cincinnati on September 18 and 19, preparing and presenting the motion for sanctions, and taking the depositions scheduled for October 5. In addition, the trial court sanctioned Adams & Coffey by ordering that Williams perform fifty hours of community service with the legal aid program organized by District Judge Merrill Hartman in Dallas. Also during this hearing, the trial court ordered Adams & Coffey to turn over for in-camera inspection other documents that had been withheld during discovery. After completing its inspection, the court on Friday, October 4, ordered some of these documents turned over to Plaintiffs.

Plaintiffs filed a second motion for sanctions against H & G early Monday morning, October 7, before the trial resumed. This second motion for sanctions asked that Plaintiffs be allowed to depose other H & G employees whose relevancy to the proceedings had not been determined until the documents had been turned over on the previous Friday and the depositions taken the following day. The trial court ordered that two of the named employees be deposed on Thursday night, October 10, and that H & G pay for the costs of deposing these two witnesses. On Friday, October 11, Plaintiffs' counsel submitted documentation showing that the expenses H & G was required to pay pursuant to the two sanctions orders totaled $17,500.30. The trial court determined these expenses to be reasonable and entered orders granting Plaintiffs' first and second motions for sanctions.

On October 18, the jury returned a verdict awarding no damages to Plaintiffs against H & G. On January 9, 2003, the trial court entered a take-nothing final judgment against Plaintiffs. On March 7, the trial court entered an order denying H & G's motion to modify the judgment and overruling H & G's objections to Plaintiffs'

itemization of costs. H & G, Adams & Coffey, and Williams timely filed notices of appeal. On the motion of Adams & Coffey and Williams, we stayed compliance with the trial court's order pending disposition of the appeal.

## STANDARD OF REVIEW

 The standard of review for a trial court's discovery sanctions is whether the court abused its discretion. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). Our supreme court has further stated that the sanctions imposed must be just. *See TransAmerican Nat'l Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991). Whether an imposition of sanctions is just is measured by two standards. *Id.* First, just sanctions require a direct relationship between the offensive conduct and the sanctions imposed. *Id.* Second, just sanctions must not be excessive. *Id.* In considering whether sanctions are just, we review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the parties' discovery abuse. *Daniel v. Kelley Oil Corp.,* 981 S.W.2d 230, 234 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

## FIRST MOTION FOR SANCTIONS

 H & G in its first issue contends that the trial court abused its discretion in granting Plaintiffs' first motion for sanctions because the Labeling Memo had nothing to do with marketing and therefore their attorneys had a good-faith basis for withholding the document from Plaintiffs. We disagree. Plaintiffs' suit was prefaced on H & G's failure to warn con-

sumers of the hazards of its products that contained silica. The trial court had been explicit at the August 30 hearing on Plaintiffs' motion to compel that all information and documentation relating to the potential health hazards of silica was to be turned over to Plaintiffs prior to the depositions of H & G's executives and employees on September 18 and 19. The trial judge also made it clear that he took an expansive and liberal view of Plaintiffs' discovery requests. This view corresponds with the views taken by both the Texas Supreme Court and the United States Supreme Court. Discovery proceedings have as their aim and purpose the administration of justice by allowing the parties to obtain the fullest knowledge of issues and facts prior to trial. *West v. Solito,* 563 S.W.2d 240, 243 (Tex.1978). Discovery rules are to be accorded a broad and liberal treatment. *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. *Id.* Discovery is permitted of any matter, not privileged, that is relevant to the subject matter and is reasonably calculated to lead to discovery of admissible evidence. *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 553 (Tex.1990). The "relevant to the subject matter" and "reasonably calculated to lead to admissible evidence" tests are liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial. *Id.*

■ The trial court followed the admonitions of these cases when it determined that the Labeling Memo, discussing the history of the warning labels which H & G had used for silica-based products, was discoverable. Warning labels are part of marketing a product. *See Lozano v. H.D. Indus., Inc.,* 953 S.W.2d 304, 314 (Tex.

App.-El Paso 1997, no writ). The purpose of warning labels is to inform a consumer about the dangers of using the product. Thus, a warning label plays a role in the marketing of the product. The Labeling Memo in this case described the thought processes of H & G in placing warning labels on their products. H & G and its attorneys of record withheld the Labeling Memo, but produced the warning labels attached to the memo. These two acts are inconsistent. The labels and the Labeling Memo relate to the same subject matter. Therefore, producing the labels but withholding the memo cannot be taken as an act of good faith by H & G and its attorneys of record.

■ H & G further contends as part of its first issue that it was Adams & Coffey alone who decided the Labeling Memo was not responsive to Plaintiffs' request for production. As part of the first standard for just sanctions, a trial court must attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. *TransAmerican,* 811 S.W.2d at 917. A party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. *Id.* On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. *Id.*

Our review of the record shows that the trial court could have reasonably determined that H & G should bear some responsibility and therefore pay reasonable expenses for the failure to produce the Labeling Memo. Although Williams stated that she made the decision not to turn over the Labeling Memo, there are other factors and circumstances that show H & G's role in this discovery abuse. First, Williams testified that H & G had withheld

the Labeling Memo from Adams & Coffey from the beginning of discovery until after the court's hearing on the motion to compel. This was a period of over eight months. To have withheld the Labeling Memo from its attorneys of record after the November 2001 discovery requests does not show the liberal spirit required when responding to discovery requests.

Secondly, H & G hired another law firm to represent it in preparing its executives and employees for their depositions and to act as lead counsel during their depositions. The record shows that Eriksen, with the law firm of Thompson and Coe, knew or should have reasonably known after Neltner's deposition about the Labeling Memo that was being withheld. The relationship of attorney and client is one of agency. *Texas Employers Ins. Assoc. v. Wermske,* 162 Tex. 540, 349 S.W.2d 90, 93 (1961). Under this rule, the omissions as well as the commissions of an attorney are to be regarded as the acts of the client whom he represents. *Id.* The actions of Eriksen, who was not H & G's attorney of record but was heavily involved in this case on behalf of H & G, should be attributed to H & G when determining sanctionable costs.

Thirdly, H & G asserted its attorney-client privilege with regard to its communications with its attorneys regarding the Labeling Memo. Although H & G certainly had a right to assert the privilege, the act shows a lack of cooperation with the court in making its determination of whether H & G or its attorney of record should pay discovery sanctions. The circumstances surrounding H & G's use of this privilege was a fact the trial court could consider in awarding sanctions.

The second standard for just sanctions requires that the punishment fit the crime. *TransAmerican,* 811 S.W.2d at 917. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Id.* In this case, the trial court was asked to impose death penalty sanctions by striking H & G's pleadings. It refused to do so and continued down the scale of possible sanctions determining that ordering H & G to pay the expenses of Plaintiffs' counsel for filing additional motions and taking certain depositions was an appropriate lesser sanction as contemplated by *TransAmerican.* The trial court's imposition of this lesser sanction despite the fact that the sanction hearing was conducted after the trial had begun, potentially jeopardizing the continuation of the trial, further emphasizes that the court's actions were measured under the circumstances.

Finally, H & G contends that the Labeling Memo and the testimony adduced after its discovery contributed little to the outcome of the trial. Whether evidence is actually used in trial and contributes to the final result is not the test for determining discoverability. The test is whether the information sought appears reasonably calculated to lead to discovery of admissible evidence. *See Axelson,* 798 S.W.2d at 553. We hold that the sanctions imposed by the trial court in its first sanctions order were just under the standards of *TransAmerican.* Therefore, the trial court did not abuse its discretion when it granted Plaintiffs' first motion for sanctions and imposed monetary sanctions on H & G. H & G's issue one is overruled.

### SECOND MOTION FOR SANCTIONS

In issues two and three, H & G contends that the trial court abused its discretion in granting Plaintiffs' second motion for sanctions. The second motion related to Plaintiffs' requests to take several additional depositions. Plaintiffs contended that the additional depositions were necessary be-

cause they did not realize the relevancy of the witnesses until they received additional documents on October 4 as ordered by the court and took the depositions of five other individuals on October 5. The trial court ordered that the two of the requested witnesses appear for their depositions at 8:00 p.m. on Thursday, October 10, while the trial on the merits proceeded during the day. The trial court ruled that H & G should pay for the time of Plaintiffs' counsel in taking these depositions.

■ H & G makes virtually the same arguments regarding the second sanctions motion as it made regarding the first sanctions motion. It argues that its attorneys of record alone decided which individuals to name in their discovery responses and that the examination of these two individuals contributed little to the preparation or outcome of Plaintiffs' case. The above reasoning and discussion apply to these arguments.

Additionally, H & G contends that the trial judge himself stated that the responsiveness of the documents he ordered turned over to Plaintiffs on October 4, and which contributed to Plaintiffs' request to take additional depositions, was a close call. However, in the second sanctions motion, Plaintiffs allege it was not only these documents that convinced them the depositions were necessary, but also the answers given by the five H & G deponents on October 5. Because there was more than one factor in the court's decision to allow the additional depositions, we cannot determine that the trial court abused its discretion by allowing Plaintiffs to take these depositions during trial and ordering H & G to pay the expense of taking them. H & G's issues two and three are overruled.

## COMMUNITY SERVICE

■ In their two issues, Adams & Coffey and Williams contend that the trial court did not meet the two prongs of the justness standard discussed in *TransAmerican* in ordering Williams to perform community service. We disagree. The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. *TransAmerican,* 811 S.W.2d at 917. In this case, the trial court determined that the refusal to turn over the Labeling Memo was attributable to both H & G and Adams & Coffey. We have discussed above the three factors which persuaded us that H & G bears some responsibility for failing to turn over the Labeling Memo. However, we note that Williams herself stated that she made the decision to detach the Labeling Memo from the warning labels and not to produce it, despite the court's order at the August 30 hearing on the motion to compel. As discussed above, this action was not in good faith and violated the liberal spirit in which discovery requests must be viewed by attorneys and their clients alike.

■ A just sanction must be directed against the abuse and visited upon the offender. *Id.* Williams conceded that she bears some responsibility for the discovery abuse in this case. Although as a general rule we do not view community service for discovery abuse with much favor, it has been approved by other courts. *See Braden v. South Main Bank,* 837 S.W.2d 733, 742 (Tex.App.-Houston [14th Dist.] 1992, writ denied), *cert. denied,* 508 U.S. 908, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993); *see also Cap Rock Elec. Co-op, Inc. v. Texas Utils. Elec. Co.,* 874 S.W.2d 92, 98 (Tex. App.-El Paso 1994, no writ). Two purposes of discovery sanctions are to 1) secure the parties' compliance with the rules of discovery, and 2) deter other litigants from violating the discovery rules. *Braden,* 837 S.W.2d at 742. We believe that

this community service will persuade Williams, Adams & Coffey, and other attorneys to be careful not to take actions that are contrary to the liberal spirit with which they are to view all discovery requests. We overrule Adams & Coffey and Williams's issues one and two.

### Conclusion

Having overruled the issues of H & G, Adams & Coffey, and Williams, the order of the trial court is **affirmed.** The stay imposed by our order of May 6, 2003 is lifted.