**Reverse and Vacate and Opinion Filed June 9, 2023**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-01114-CV

**SCOTT FRENKEL, Appellant**
**V.**
**STEPHEN COURTNEY, M.D., STEPHEN COURTNEY, M.D., P.A.,**
**CAMERON CARMODY, M.D., AND CAMERON CARMODY, M.D., P.A.,**
**Appellees**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-03470-2016**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Nowell

Attorney Scott Frenkel appeals from the trial court's March 1, 2021 Order

sanctioning him.[1] We reverse and vacate the trial court's March 1, 2021 Order.

### BACKGROUND[2]

Cameron Carmody and his professional association, Cameron Carmody,

M.D., P.A., sued Stephen Courtney, Stephen Courtney, M.D., P.A. and Plano

---

[1] The trial court signed the order on March 1, 2021, but the order was file stamped the next day.

[2] The facts underlying Frenkel's appeal of the sanctions order are familiar to the parties and to the Court. *See In re Frenkel*, No. 05-21-00194-CV, 2021 WL 2943939, at *1 (Tex. App.—Dallas July 13, 2021,

Orthopedics & Sports Medicine. Eventually, the Courtney Parties filed third-party claims against Kelly Liebbe, an attorney, and others. During the lawsuit, Liebbe represented herself at various times and, at other times, she was jointly represented by Frenkel. Frenkel entered his appearance as co-counsel on behalf of Liebbe on July 31, 2020.

On July 20, 2020, the Carmody Parties and Courtney Parties filed a joint motion to compel Liebbe to produce an audio recording. The motion also sought sanctions against Liebbe. Liebbe filed her response in opposition on August 6, 2020. The response is electronically signed by Liebbe and includes Frenkel's signature block as counsel for Liebbe. Liebbe's response makes allegations about Courtney and attaches an exhibit in support of those allegations. The exhibit is a seven-page document on the letterhead of the Texas Medical Board discussing alleged bad acts by Courtney (hereinafter "Document at Issue").

On August 7, 2020, the Courtney Parties filed a reply to Liebbe's response to the motion to compel. The reply states:

> Defendant Liebbe has falsely represented to this Court that the Texas Medical Board made certain findings against Dr. Courtney when the "evidence" she cites in her response were actually mere allegations *. . . in a complaint that was dismissed by the Texas Medical Board for lacking merit with an apology to Dr. Courtney.*

orig. proceeding) (mem. op.). The facts underlying the lawsuit generally are not relevant to this appeal, and we do not recite them here. *See* TEX. R. APP. P. 47.4 (Memorandum Opinions).

The Courtney Parties requested the Court sanction Liebbe pursuant to Rule 13 of the Texas Rules of Civil Procedure and Chapters 9 and 10 of the Texas Civil Practice and Remedies Code. The Carmody Parties also filed a reply stating Liebbe's misrepresentation "is obvious *and appears on letterhead purporting to be from the Texas Medical Board* (and also includes – peculiarly – neither a front page nor a signature from any state official.)" Liebbe filed a sur-reply on August 8, 2020. Like the response, the sur-reply is electronically signed by Liebbe and includes Frenkel's signature block as counsel for Liebbe.

The trial court held a hearing on August 10, 2020, to consider the joint motion to compel. At the beginning of the hearing, Frenkel announced himself as counsel for Liebbe. At that hearing, counsel for the Carmody Parties informed the trial court:

> Judge, in her reply brief to the motion to compel, Ms. Liebbe cites to a Texas Medical Board finding of fact regarding Dr. Courtney. . . the finding that they refer to or that she refers to is on Texas Medical Board letterhead, and is clearly forged. . . . It is a forged document. And Ms. Liebbe says it is an authentic document and also says that she verified the document, and it simply can't be the case.

In response, Frenkel stated: "There are lies occurring in this case, but it is not with Ms. Liebbe; and she certainly didn't attach TMB documents that were forged." Frenkel continued: "And, by the way, nothing was forged from the TMB. Those were actual findings from the Texas Medical Board about Courtney." The trial judge told the lawyers: "if that's a falsified document, for example, the credibility of anyone after that - - by the way, the person propounding it and the one defending

–3–

against it is important to me, and so if someone has been lying to me on either side - - and someone is lying. It's either authentic or it is not." At the end of the hearing, the court scheduled a sanctions hearing on October 6, 2020. The judge then added:

> Also, too, and I tell you something, it really disturbs me that there is a possibility, and I don't know - - but someone is lying to me about the authenticity of the Medical Board document, for example. I want to get to the bottom of that before that hearing. I want to hear what that is. So if y'all need subpoenas, if y'all need me to order depositions on written questions or subpoena somebody from the Texas Medical Board with their file for - -" the October 6 hearing "- -then y'all do that, and I will sign it, okay?

On September 14, 2020, the Courtney Parties and the Carmody Parties filed a joint motion for sanctions against Liebbe and Frenkel. The motion details allegations that Liebbe and Frenkel misrepresented the Document at Issue to the trial court. The movants attached an affidavit made by Scott Freshour, the General Counsel for the TMB, which states his understanding that

> there is a dispute over 12 pages of documents attached to this affidavit. . . The Documents at Issue are not official TMB documents, as the documents and their content were not created by TMB. The Documents at Issue do not constitute any findings, conclusions, statements, or any other determination by TMB. The Documents at Issue were created and submitted to TMB by a private citizen. The use of TMB letterhead by this private citizen was not authorized by TMB.

The motion sought death-penalty sanctions.

Liebbe was represented by new counsel at the October 6 hearing, and Frenkel appeared at the hearing with his own counsel. Liebbe testified that, as to the statements in her August 6 sur-reply, she believed the Document at Issue contained

–4–

findings by the TMB. She ultimately conceded the Document at Issue did not contain TMB findings.

Liebbe confirmed she made no effort to verify whether the Document at Issue was authentic after the Carmody and Courtney Parties filed their replies, and she claimed she did not "see that August 7" reply brief. During her testimony, she had the following exchange with the judge:

> The Court: Did you do anything between August the 7th, which is the, I believe, the notification by the Plaintiffs, and August the 10th, which is the hearing date in front of the Court, to show or to verify before you made such a bold statement to the Court purporting that these documents were authentic?
> Ms. Liebbe: No, I did not.
> The Court: Do you think that an attorney has a legal obligation to do a reasonable investigation as to representations they make to the Court?
> Ms. Liebbe: I do.
> The Court: Do you believe that you in your efforts were reasonable - - were a reasonable investigation before you made such a bold statement and, frankly, double-down [sic] on it in your motions?
> Ms. Liebbe: Your Honor, I don't believe I did anything wrong.
> The Court: I didn't ask you that. . . . did you do any reasonable investigation prior to coming into court and making that representation?
> Ms. Liebbe: I did not. I did not get that August 7 notification that they said it was not authenticated.
> The Court: You didn't get it? Is that what you're saying?
> Ms. Liebbe: Yeah, I don't remember getting that. And had I received that, I absolutely would have backed off and said you are right, I was wrong.
> The Court: Okay. On August the 10th, when you or Mr. Frenkel on your behalf stated to the Court, apparently twice, that these were not forged documents, these are authentic, these are authentic findings from the Medical Board, did y'all do anything on your own, since it is your representation, from August the 10th until September the whatever, when they filed, I guess, a motion for this hearing, did you do anything to verify or to correct your statements to the Court?

–5–

Ms. Liebbe: No.

Discussing the Document at Issue during the hearing, the judge stated: "There is no way in the world that [document] comes from a Medical Board. It is so grammatically incorrect; it is so stream of conscious. It is - - it obviously, I think by just looking at it and reading it very quickly on my part, not for any substance, obviously didn't come from a Medical Board." During the hearing, the judge also learned that, when the Document at Issue was produced in discovery, it included additional pages that Liebbe omitted from her filing; the additional pages show the Document at Issue is only a complaint and not findings by the TMB.

Frenkel testified he represents Liebbe, he represented her at the August 10 hearing, and she is lead counsel. However, he stated, he did not file the document; Liebbe did so while acting as her own counsel.

Frenkel did no research to determine whether the Document at Issue represented findings by the TMB before telling the court it was not forged; he had no reason to believe his statement was wrong at the time he made it. Rather, he explained, he saw the document was Bates labeled when he "look[ed] at them very quickly and briefly before the hearing." He became aware the document did not reflect actual findings when "I heard one of y'all say that." Frenkel testified: "And, Judge, this is not something that I would do in your courtroom or any other courtroom." The judge replied:

Here's my problem, Mr. Frenkel. I read it, and it just oozes of not being accurate.

. . .

[I]t is typographically wrong, grammatically wrong; it doesn't sound like a Medical Board. I have never dealt with the Medical Board before, but it doesn't sound likely any Medical Board that we want in the State of Texas. It is atrocious if that came out of our Medical Board.

And that concerns me that you and/or Ms. Liebbe didn't at least, before making these gigantic accusations against somebody, that you didn't question it just for a second and go wait a second, this doesn't seem right. And now I know, just today, that the production made by [counsel] on behalf of Mr. McMurrey included pages before the pages that were submitted to the Court that, obviously, show that it was a complaint and not a finding or factual rendition of what occurred before a medical board.

After testimony, the trial judge stated:

To say that I'm very concerned about the conduct in this case is probably an understatement. Although people make mistakes, and we all do, we as attorneys have certain obligations to do things so that we don't perpetuate falsehoods or lies or anything else. And right now, I'm talking about the Texas Medical Board purported records.

I read the records and I knew from moment one that there is no way in the world this came from the Texas Medical Board. And, by the way, I only apparently read part of it because I got the rest of it today. I knew from the grammatical errors and the way it was written, and there was really no medical analysis from it at all, that it was suspicious.

And I think attorneys before they represent things to the Court have an obligation - - in fact, the rules say that they have an obligation to do a reasonable investigation prior to making certain representations to the Court, and that did not happen here.

Now that I know that the production by Mr. McMurrey included pages that preceded the ones that were provided to the Court that said it was a complaint, now I am even more concerned that the lawyers were fast and loose with this report and didn't do a reasonable investigation as they should and repeated allegations from a complaint as though they were findings from the Texas Medical Board. And now those complaints are made part of a falsified pleading; the pleading is not true but for the public to see.

. . .

–7–

The question that presents, though, what am I going to do about it. Death penalty sanctions are pretty severe. I've been involved in, as a judge and as a lawyer, in death penalty sanctions. And it is to be reserved for the most egregious conduct and after progressive sanctions are done. . . .

I believe there is something else that I can do. What that is, I am not - - I am kind of stuck on what's the most appropriate sanction for the conduct that I believe was inappropriate by Ms. Liebbe. I think that Mr. Frenkel was blissfully ignorant to have his name being put on pleadings that were filed. . . . I think that's ignorance on [Frenkel's] part. I don't know if that's sanctionable.

Later in the hearing, the judge stated: "Let me talk about Mr. Frenkel. . . I think when you put your name on a block to sign a pleading that you have an obligation as an attorney, because then every attorney would say, well, I didn't really do that; I know my name is on it, but my legal assistant did it, or whatever. . . . I'm going to order that you take ten hours - - additional hours of ethics training over the next 24 months. I am going to fine you a thousand dollars."

The trial court signed an order on March 1, 2021 granting the joint motion for sanctions. In the March 1 Order, the trial court noted that Liebbe electronically signed the sur-reply and Frenkel appeared on the signature block as her co-counsel of record. The court also noted that three days later, on August 10, 2020, Frenkel told the court in a hearing that "nothing was forged from the TMB. Those were actual findings from the Texas Medical Board about Courtney." The March 1 Order states:

Until the hearing on October 6, 2020, neither Liebbe nor Frenkel made any attempt with the Court or Drs. Courtney and Carmody to retract or withdraw their prior representations that the Documents at Issue were, in fact, actual findings made or adopted by the Texas Medical Board. Specifically, Liebbe and Frenkel testified that neither

–8–

of them made any effort to contact the Texas Medical Board to determine the authenticity or legitimacy of the Documents at Issue as being actual findings made or adopted by the Texas Medical Board before the October 6, 2020 hearing.

Defendant Liebbe's Exhibit 5 for the sanctions hearing was admitted into evidence, but in sustaining Dr. Courtney's objection for optional completeness, the documents Bates Numbered MCM-001509 though MCM-001512 were added to Defendant Liebbe's Exhibit No. 5. The documents Bates Numbered MCM-001509 though MCM-001512 show on their face that it was a complaint registered or submitted with the Texas Medical Board by Dr. Courtney's ex-wife, Cynthia Ellis.

A simple reading of the Documents at Issue show that they contain extensive and obvious grammatical errors, incomplete sentences and salacious allegations, and also lack the formality that an official document or record of a government agency would typically reflect.

Liebbe's representations that the Document at Issue were actual findings made or adopted by the Texas Medical Board against Dr. Courtney, as she set forth in her Response and Sur-Reply to the Joint Motion to Compel, were false.

Liebbe's sworn testimony given during the October 6, 2020 hearing that she did not read the Replies is not credible because she filed a Sur-Reply to those Replies.

Liebbe's Response and Sur-Reply to the Joint Motion to Compel constitute fraudulent pleadings before the Court as they pertain to the Documents at Issue.

Frenkel's representation to the Court, as Liebbe's counsel of record, during the August 10, 20202 hearing of "And, by the way, nothing was forged from the TMB. Those were actual findings from the Texas Medical Board about Courtney,". . . was false. Before making that representation to the Court, Frenkel knew, should have known, or should have made a reasonable investigation that would have revealed that the Documents at Issue were not actual findings made or adopted by the Texas Medical Board against Dr. Courtney.

The March 1 Order states that, pursuant to Rule 215 of the Texas Rules of Civil Procedure and the court's inherent power, sanctions are warranted against Liebbe and Frenkel. The court ordered Frenkel to pay $1,000 to Texas Lawyers' Assistance

Program (TLAP) and attend an additional 10 hours of continuing legal education on legal ethics as a sanction.

The parties now all agree the Document at Issue does not contain actual findings made or adopted by the TMB.

LAW & ANALYSIS

In a single issue, Frenkel challenges the March 1 Order and argues the trial court abused its discretion by imposing sanctions against him. Specifically, Frenkel asserts the trial court had no basis to impose sanctions under Rule 215, had no evidence to impose sanctions under its inherent authority, and neither appellees nor the trial court provided written notice that sanctions would be sought under the trial court's inherent authority.

We review a trial court's sanctions order for abuse of discretion. *Brewer v. Lennox Hearth Products, LLC*, 601 S.W.3d 704, 717 (Tex. 2020). In our review, we consider the entire record, including the evidence, counsels' arguments, the circumstances surrounding the offending party's discovery abuse, and all of the offending party's conduct during the litigation. *Duncan v. Park Place Motorcars, Ltd.*, 605 S.W.3d 479, 488 (Tex. App.—Dallas 2020, pet. withdrawn) (citing *Westfall Family Farms, Inc. v. King Ranch, Inc.*, 852 S.W.2d 587, 590 (Tex. App.—Dallas 1993, writ denied); *Hill & Griffith Co. v. Bryant*, 139 S.W.3d 688, 694 (Tex. App.—Tyler 2004, pet. denied)). We view the evidence in the light most favorable to—with all reasonable inferences drawn in support of—the trial court's ruling. *Id.*

–10–

### A. Rule 215.3

Frenkel argues the trial court had no basis under Texas Rule of Civil Procedure 215 to impose sanctions. The Courtney Parties concede that the sanctions imposed by the trial court are not included within Rule 215's enumerated list of sanctions.

Texas Rule of Civil Procedure 215.3 permits a court to impose sanctions on a party who abuses the discovery process. *See* TEX. R. CIV. P. 215.3 (Abuse of Discovery Process in Seeking, Making, or Resisting Discovery). The available sanctions for abusing the discovery process while resisting discovery are enumerated in Rule 215.2(b). *See* TEX. R. CIV. P. 215.2(b); *see also* TEX. R. CIV. P. 215.3. The sanction assessed by the trial court, a $1,000 fine payable to TLAP and additional hours of CLE, do not fall within the relevant paragraphs of Rule 215.2. *See* TEX. R. CIV. P. 215.2(b). Accordingly, we conclude Rule 215 cannot form the basis for affirming the trial court's sanctions order. We sustain Frenkel's issue to this extent.

### B. Inherent Power to Sanction

Courts possess inherent powers that aid the exercise of their jurisdiction, facilitate the administration of justice, and preserve the independence and integrity of the judicial system. *Brewer*, 601 S.W.3d at 718. A court's inherent authority includes the "power to discipline an attorney's behavior." *Id.* Accordingly, courts are "empowered to punish an attorney's behavior even when the offensive conduct is not explicitly prohibited by statute, rule, or other authority." *Id.*

However, a court's inherent authority to sanction is limited by due process; sanctions must be just and not excessive and must be exercised with restraint and great caution. *Id.* "To that end, invocation of the court's inherent power to sanction necessitates a finding of bad faith." *Id.* Bad faith is not just intentional conduct but intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts. *Id.* at 718-19. "Bad faith" includes "conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose." *Id.* at 719. Errors in judgment, lack of diligence, unreasonableness, negligence, or even gross negligence—without more—do not equate to bad faith. *Id.* Improper motive, not perfection, is the touchstone. *Id.* Bad faith can be established with direct or circumstantial evidence, but absent direct evidence, the record must reasonably give rise to an inference of intent or willfulness. *Id.*

Frenkel incorrectly represented to the trial court that "nothing was forged from the TMB. Those were actual findings from the Texas Medical Board about Courtney." Addressing Frenkel's statement, the March 1 Order states: "Before making that representation to the Court, Frenkel knew, should have known, or should have made a reasonable investigation that would have revealed that the Documents at Issue were not actual findings made or adopted by the Texas Medical Board against Dr. Courtney." The March 1 Order concludes the sanctions are warranted to deter Frenkel "from making any further false representations to the Court." Frenkel argues the March 1 Order uses "negligence-like language to describe

–12–

Frenkel's alleged sanctionable conduct," which cannot form the foundation for a bad faith finding. We agree.

The March 1 Order includes the trial court's findings, which are consistent with the concerns the judge verbally expressed, noting his belief that Frenkel "was blissfully ignorant to have his name being put on pleadings that were filed. . . . I think that's ignorance on [Frenkel's] part." The judge also stated his concern the "lawyers were fast and loose with this report and didn't do a reasonable investigation as they should and repeated allegations from a complaint." Neither the March 1 Order nor the judge's comments provide a basis for finding Frenkel acted in bad faith; they do not show Frenkel engaged in the wrongful conduct for an impermissible reason or out of willful noncompliance or willful ignorance of the facts. *Id.* at 718-19. Rather, they indicate lack of diligence, negligence, or gross negligence, which do not alone equate to bad faith. *See id.* at 719. The evidence presented does not show Frenkel engaged in the "conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose." *Id*. at 719.

Frenkel's failure to investigate the source of the Document at Issue before making his bold proclamation that the document was not forged was ill advised. However, reviewing the evidence in the light most favorable to the trial court's ruling, *see Duncan*, 605 S.W.3d at 488, we cannot conclude the evidence gives rise to an inference of intent or willfulness or indicates improper motive, *see Brewer*,

601 S.W.3d at 719. The trial court abused its discretion by assessing sanctions without finding bad faith. We sustain Frenkel's issue to this extent.

We need not address Frenkel's third argument challenging the sanctions order on the basis that he did not receive sufficient notice. *See* TEX. R. APP. P. 47.1.

CONCLUSION

We reverse and vacate the trial court's March 1 Order as it relates to Frenkel.

211114f.p05

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

| | |
|---|---|
| SCOTT FRENKEL, Appellant | On Appeal from the 296th Judicial District Court, Collin County, Texas Trial Court Cause No. 296-03470-2016. |
| No. 05-21-01114-CV     V. | |
| STEPHEN COURTNEY, M.D., STEPHEN COURTNEY, M.D., P.A., CAMERON CARMODY, M.D., AND CAMERON CARMODY, M.D., P.A, Appellees | Opinion delivered by Justice Nowell. Justices Reichek and Garcia participating. |

In accordance with this Court's opinion of this date, the trial court's March 1 Order Granting Opposed Joint Motion for Sanctions Against Defendant Kelly Liebbe and Her Counsel, Scott Frenkel, and Entry of Protective Order as to Certain Falsely Submitted Documents is **REVERSED** as to the sanctions against appellant Scott Frenkel.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 9th day of June 2023.